IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CERTIFIED ENTERS., INC., et al.,      )
                                      )
        Plaintiffs,                   )
                                      )
    vs.                               )      Case No. 4:17-CV-202 SNLJ
                                      )
UNITED STATES OF AMERICA,             )
                                      )
        Defendant.                    )

## MEMORANDUM AND ORDER

Plaintiffs filed this lawsuit against the United States stating that the United States Internal Revenue Service ("IRS") wrongfully levied on their bank accounts for the tax debt owed by a delinquent taxpayer, Dalton West Coast, Inc. ("DWCI"). Plaintiffs contend that they are not the alter egos of or are otherwise related to DWCI and that they are thus not liable for the taxes owed by DWCI. The United States served discovery requests on plaintiffs on June 1, 2017. Before the responses were due, the plaintiffs filed a motion for summary judgment against the United States. The United States now seeks an order compelling plaintiffs to respond to the discovery requests (#25).

Federal Rule of Civil Procedure 26(b)(1) provides that the scope of discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In this wrongful levy case, the government bears the initial burden of persuasion to show the taxpayer DWCI's interest in the plaintiffs' seized property. *See Scoville v. United States*, 250 F.3d 1198, 1201 (8th Cir. 2001). The

government has indicated that it can establish that plaintiffs are the alter egos of the taxpayer, and it seeks discovery to support that theory.

First, plaintiffs object to the time period the United States has applied to its requests. The government claims discovery dating back to January 1, 2004 is relevant because it is two years before DWCI's relevant tax liability (for tax year 2006). (Some requests for admission date back to February 9, 2000.) Plaintiffs point out that the underlying tax liability is not in dispute, however, and that, instead, the government must show that plaintiffs were alter egos of DWCI at some time on or after January 27, 2011, which is the date on which the lien arose. Plaintiffs have thus offered to provide responses dating back to January 1, 2010 (just over a year before the date the tax lien arose) through the date the levies were issued on plaintiffs' property, on June 1, 2016. Plaintiffs state that this time period of over six years will permit the government latitude to explore facts in the year leading up to the pivotal January 27, 2011 date without permitting a full-blown fishing expedition into time periods with no perceptible relevance to the issue of whether alter ego relationships existed on or after January 27, 2011. (#26 at 7.)

The government points out that it became DWCI's creditor at the time DWCI's tax liability accrued --- in 2006, not 2011. In 2006, DWCI accrued a large income tax liability by selling off a portion of its business. DWCI did not pay its corporate income taxes, and the United States became its creditor on December 31, 2006, or, at the latest, March 15, 2007, when DWCI's 2006 tax return and payments were due. *See United*

*States v. Scherping*, 187 F.3d 796, 805 (8th Cir. 1999) ("the United States is a creditor on the date a return is due to be filed and the taxes are required to be paid for each period").

Plaintiffs argue, quoting the government's response to plaintiffs' motion for summary judgment, that the government itself agrees that "it must prove a nexus between DWCI and the levied property on or after the date the lien arose – January 27, 2011." (#26 at 5 (quoting defendant's brief, #23 at 4).) Plaintiffs appear to believe that evidence regarding whether there was a nexus between DWCI and the levied property (i.e., whether DWCI and plaintiffs were alter egos) *before* January 27, 2011 is therefore irrelevant. The Court disagrees. Evidence regarding the relationship between DWCI and plaintiffs before the 2011 lien arose is relevant to the issues in this case. The alter ego analysis required in this case to support a showing of any nexus may be a complicated one, and it defies common sense to suggest that evidence regarding the plaintiffs' relationship to DWCI before 2011 would not be relevant.

Next, plaintiffs objected to producing responsive documents pending resolution of the plaintiffs' motion for summary judgment, which was filed on June 16, 2017. The Case Management Order in this case was entered in April 2017 and states that discovery closes on February 26, 2018. Plaintiffs did not request a stay of discovery pending the motion, and this Court will not do so now. It appears the parties have been discussing a confidentiality agreement regarding discovery. To the extent plaintiffs require a protective order to respond to discovery requests, they should so move the Court.

Third, as to the government's requests for admission ("RFAs") served pursuant to Federal Rule of Evidence 36, plaintiffs did not respond to requests regarding whether

DWCI was incorporated under the laws of California or whether certain individuals related to plaintiffs' CEO were officers or shareholders of DWCI. Rule 36 requires that plaintiffs "may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Plaintiffs observe that, in order to answer the RFAs, they would be required to seek information from third parties. Although they cite several out-of-circuit cases stating that such an effort is not required, it does not appear that plaintiffs stated in their responses --- as the Rule requires --- that they lack knowledge after making reasonable inquiry. Plaintiffs also base their objection on the time period attached to the RFAs; that objection has already been overruled above. The Court will compel plaintiffs to respond to RFAs 6-10 in accordance with Rule 36. Although the Court does not opine on to what extent plaintiffs are required to seek information from third parties as part of their "reasonable inquiry," the Court is cognizant that plaintiffs' CEO stated in a declaration filed with this Court that he is "familiar with the business operations of [DWCI] before 2006."

Fourth, the government seeks an order compelling plaintiffs to respond to certain interrogatories. The government's contention interrogatory (Interrogatory No. 9) asks for facts to support plaintiffs' claim under 26 U.S.C. § 7426(h), including

1. The IRS officer(s) or employee(s) that disregarded a provision of the Internal Revenue Code.

2. The provision that plaintiffs contend was violated.

3. The economic damages stemming from the violation.

Plaintiffs object that they do not yet have information to respond. The government

contends that plaintiffs must have at least partial answers to the interrogatory in order to

have made a claim under § 7426(h). Section 7426(h) allows for damages "if…there is a

finding that any officer or employee of the Internal Revenue Service recklessly or

intentionally, or by reason of negligence, disregarded any provision of this title."

Plaintiffs respond that they do not yet have information with which to answer the

interrogatory. The claim is being made on the assumption that there will be such a

"finding," but this Court agrees with plaintiff that answers may not be available early in

discovery.

The government also moves to compel responses regarding interrogatories No. 1,

3, and 5, which seek information regarding

(No. 1) The identity of plaintiffs' owners, shareholders, director, managers, and

employees, including contact information.

(No. 3) Plaintiffs' ownership structure

(No. 5) Plaintiffs' managerial structure.

Plaintiffs' primary objection to these interrogatories appears to be the time period. This

Court has already overruled that objection; plaintiffs shall respond to the interrogatories.

Fifth, the government moves to compel responses to certain Requests for

Production ("RFPs"). To the extent plaintiffs object they have documents that are

responsive but privileged, they must supply a privilege log in accordance with Federal

Rule of Civil Procedure 26(b)(5). To the extent plaintiffs seek to delay production until

after resolution of the summary judgment motion, that request is denied.

The Court must directly address certain specific requests.

RFP 5-6 are for copies of all contracts of other agreements between Certified Enterprises, Inc. and any employee, officer, director, or shareholder from January 1, 2004 to present. The Court agrees that this request is overbroad, particularly because the government has not explained how plaintiff's contracts with its own people will shed light on whether it is the alter ego of DWCI. The Court will deny the motion to compel with respect to RFPs 5-6 without prejudice to the government narrowing its requests.

RFPs 15-16 request banking information including cancelled checks and statements for all banking activities from January 1, 2004 to present. Plaintiffs object under privacy laws including Article 1, Section I of the California Constitution. Plaintiffs state that defendant has not shown a "compelling need" to overcome the basic financial privacy rights afforded to the California corporations. Indeed, at least one district court has observed that "personal financial information is subject to disclosure when the need to maintain privacy is outweighed by the competing need to ascertain the truth in connection with legal proceedings." *See Gottlieb v. Wiles*, 143 F.R.D. 235, 238 (D. Colo. 1992). As the government states, the bank records sought here are relevant because they may show movement of money between DWCI and plaintiffs and their principals, as well as evidence of shared customers. The Court will grant the motion as to these RFPs.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to compel (#25) is

**GRANTED** in part and **DENIED** in part, in accordance with this Memorandum.

Dated this __23rd__ day of October, 2017.

                                             _____

                                             STEPHEN N. LIMBAUGH, JR.
                                             UNITED STATES DISTRICT JUDGE