**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **CERTIFIED ENTERS., INC., et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-CV-202 SNLJ |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

In 2006, Dalton West Coast, Inc. ("DWCI")[1] incurred $9 million in tax liability when it sold its document shredding business and some assets to Cintas Document Management LLC. The United States Internal Revenue Service ("IRS") ultimately collected that tax liability by levying the bank accounts of the plaintiffs, which are three entities named Certified Enterprises, Inc. ("Enterprises"), Fibre Resources Unlimited, Inc. ("Fibre"), and Certified Recycling, Inc. ("Recycling"), claiming the plaintiffs are the "alter egos" of DWCI. Plaintiffs filed this lawsuit against the United States stating that the IRS wrongfully levied on their bank accounts for that tax debt. Plaintiffs contend that they are not the alter egos of or are otherwise related to DWCI and that they are thus not liable for the taxes owed by DWCI. The government filed a motion for summary judgment. (#69.) Plaintiffs filed a motion to strike certain evidence and argument used

---

[1] DWCI was known as Certified Document Destruction ("CDD") until the sale to Cintas. Cintas bought the right to the CDD name. For clarity, the Court will refer to that entity as DWCI for all time periods.

1

by the government in its motion for summary judgment. (#81.) The motions have been fully briefed and are ready for disposition.

I.     **Factual Background**

The following facts are undisputed except where indicated. In 2000, DWCI was incorporated in California by John C. Dalton, IV. DWCI was in the document destruction business. By 2005, members of John IV's family owned at least four legal entities (collective, the "Certified Entities"): (1) plaintiff Enterprises, (2) plaintiff Fibre, (3) plaintiff Recycling, and (4) DWCI. Plaintiffs purport to be in the recycling business, and they describe DWCI as a document destruction company.

In late 2005 and early 2006, DWCI entered into an asset sale and purchase agreement with Cintas. DWCI's sale proceeds were approximately $28 million. In March 2006, DWCI's shareholders sold their outstanding corporate stock to CDD Holdings, LLC, which was an entity unrelated to any of the Certified Entities, for $18.9 million. In advance of the transaction, the Certified Entities' accountant, Michael Rountree, prepared a pro forma 2006 tax return that showed DWCI would owe a $8 million tax liability. CDD Holdings agreed to pay DWCI's taxes as part of the agreement, but neither DWCI nor CDD Holdings paid the taxes.

Then, on January 27, 2011, DWCI was assessed over $9.4 million in unpaid federal taxes by a delegate of the Secretary of the Treasury.[2]

---

[2] Plaintiffs dispute the government's statement of fact as to this point. (#86 at ¶ 2.) However, in plaintiffs' memorandum in opposition to the government's motion for summary judgment,

In April 2015, the private equity firm now known as Parallel49 ("P49") acquired a majority (74%) interest in each of the three plaintiffs.

On June 1, 2016, the IRS issued three Notices of Levy on First Bank in Hazelwood, Missouri related to each of the three plaintiffs. The levies attach to all property and rights to property of the plaintiffs as alter egos of DWCI, and the government has collected $69,696.55 from the 2016 levies. The government contends that DWCI's 2006 tax liability now exceeds $23 million.

Plaintiffs contend that the levies were wrongful and filed this lawsuit.

## II.    Motion for Summary Judgment

### A.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson*

---

plaintiffs state that the "federal tax lien against DWCI arose on January 27, 2011, the date the IRS assessed tax liability for the Stock Sale Transaction." (#97 at 9.)

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

The parties agree that California law governs their dispute.

**B.     Discussion**

Third parties may bring an action "against the United States when it is shown property was wrongfully seized pursuant to levy by the IRS." *Security Counselors, Inc. v. United States*, 860 F.2d 867, 869 (8th Cir. 1988); 26 U.S.C. § 7426. In such a wrongful levy action, the plaintiff carries the initial burden of showing some interest in the levied property in order to have standing. *Id.*; *see also Scoville v. United States*, 250 F.3d 1198, 1201-02 (8th Cir. 2001). Once the plaintiff has made this initial showing, the burden then shifts to the government to prove a "nexus" between the property and the delinquent taxpayer. *Scoville*, 250 F.3d at 1201. The Eighth Circuit has not ruled on whether the burden of proof for the government is "preponderance of the evidence" or "substantial evidence." *Id.* If the government proves a nexus, the plaintiff has "the ultimate burden to prove the levy was wrongful." *See id*.

The parties agree that the plaintiffs have satisfied their burden of showing some interest in the levied bank accounts --- the bank accounts belonged to the plaintiffs. The

burden thus shifts to the government to prove a "nexus" between the levied property (the bank accounts) and the delinquent taxpayer (DWCI) on or after the date the lien arose --- January 27, 2011. The IRS states that the 2016 levies on the plaintiffs' bank accounts were based upon the theory that the plaintiffs are the alter egos of the delinquent taxpayer DWCI.

Specifically, the government contends that the Certified Entities are alter egos because the Daltons operated them as a "single enterprise." A single enterprise is characterized by separate entities that "integrate their resources and operations to achieve a common business purpose." *Toho-Towa Co. v. Morgan Creek Prods.*, 159 Cal. Rptr. 3d 469, 480 (Cal. Ct. App. 2013). To demonstrate alter ego liability based on a single enterprise theory, the government must show (1) "a unity of interest and ownership such that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise, and (2) an inequitable result if the acts in question are treated as those of one corporation alone." *Gopal v. Kaiser Found. Health Plan*, 203 Cal. Rptr. 3d 549, 554 (Cal. Ct. App. 2016) (citing *Las Palmas Associates v. Las Palmas Ctr. Associates*, 1 Cal. Rptr. 3d 301, 317 (Cal. Ct. App. 1991)).

The government cites numerous facts in support of its argument that the Certified Entities had a unity of interests necessary to comprise a single enterprise. The government argues that (1) the Daltons owned and controlled the Certified Entities; (2) the Certified Entities held themselves out as a single enterprise through their shared phone numbers, website, and use of the "CERTIFIED" name; (3) the Certified Entities disregarded corporate formalities such as holding regular board and shareholders

5

meetings; (4) the Certified Entities commingled funds and assets; (5) the Certified Entities shared offices and other locations; (6) the Certified Entities commingled payroll and shared employees; (7) DWCI was inadequately capitalized; and (8) the Certified Entities collectively participated in the Cintas transaction despite it nominally being a deal only with DWCI.

For each of those factors, however, the plaintiffs offer competing evidence and arguments to support that the Certified Entities were not a single enterprise as a matter of law. Generally, the plaintiffs point out that the government's alter ego analysis is flawed because DWCI was a demonstrably separate and successful business --- successful enough, of course, to be sold for more than $20 million a mere six years after its founding. Plaintiffs provide evidence that DWCI had its own corporate assets, and that it was not formed or used to cover existing liability.

As for the eight factors the government stresses show the Certified Entities were all part of a single enterprise --- and that the plaintiffs should thus be held responsible for DWCI's 2006 federal tax liability --- the plaintiffs raise ample disputed facts. The briefing of this motion was substantial. The parties filed hundreds of exhibits, almost 100 pages of briefing, and hundreds of pages of statements of facts and responses thereto. The Court has thoroughly reviewed the parties' submissions and concluded that ample disputes of fact exist, precluding any grant of summary judgment for the government. Significantly, none of the government's cases cited in support of its motion involve the grant of summary judgment based on an alter ego relationship found pursuant to California law. "Alter ego is an extreme remedy, sparingly used" under California law. *Tamko Roofing Products, Inc. v. Smith Eng'g Co.*, 450 F.3d 822, 827 (8th Cir. 2006)

(quoting *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000). Although shared ownership and control may be an indicator of unity of interest, *see, e.g.*, *J.M. Tanaka Const., Inc. v. N.L.R.B.*, 675 F.2d 1029, 1035 (9th Cir. 1982), plaintiffs offer evidence that they and DWCI had different owners and different operators. Plaintiffs further reject the relevance of parts of the government's evidence. Regarding the alleged shared website, plaintiffs point out that the government's proffered website is from 2011, after DWCI's assets and stock were sold (and the shredding business that had been sold to Cintas was operating under Cintas's control). Plaintiffs also provide evidence that DWCI used a different website and phone number. Plaintiffs also provide facts contradicting the government's view of the Certified Entities' observance of corporate formalities: for example, the entities were separately incorporated and had their own bylaws and their own stock; they had separate bank accounts, customers, incomes, employees, locations, machinery, stockholders, and they filed separate tax returns.

The Court sees no need to identify additional factual disputes. Suffice to say they are many, and they are material. For those reasons, the government is not entitled to summary judgment.

## III. Motion to Strike

Plaintiffs move to strike certain evidence and argument used by the government in its motion for summary judgment. (#81.) Plaintiffs seek entry of an order striking

> (1) the declaration of Michael Kretch (#71) on behalf of the National Archives and Records Administration, and paragraphs 272–285 and 287 of the United States' Statement of Uncontroverted Material Facts;
>
> (2) the declaration of Jeremy Eggerth (# 72), submitted in support of the United

7

> States' Motion for Summary Judgment, and paragraphs 2-4 of the United States' Statement of Uncontroverted Material Facts;
>
> (3) all facts and argument pertaining to A Certified Mobile Shred, Inc., including the alleged facts in paragraphs 24, 54 n.6, 80, 154, 287, and 289–296 of the United States' Statement of Uncontroverted Material Facts; and
>
> (4) the argument on pages 5, 13, 15, 17, 18, and 20 of the United States' Memorandum in Support of its Motion for Summary Judgment relating to items (1)-(3).

Because the Court is denying the government's motion for summary judgment, the plaintiffs' motion to strike is in some ways moot. However, because the Court expects that the plaintiffs will oppose any use of evidence at trial stemming from the declarations or related to A Certified Mobile Shred ("CMS"), the Court will address the motion to strike in those respects.

Discovery closed on July 26, 2018. On August 3, the government served its "First Supplemental (Initial) Disclosures," which identified Michael Kretch, Director, Federal Records Centers Program – Operations West, as an "individual likely to have discoverable information." Specifically, this new disclosure advised that Kretch "may have discoverable information regarding Certified Enterprises' . . . bids and contracts to provide document destruction and recycling services to the National Archives and Records Administration and the implementation thereof. In addition, Mr. Kretch may have discovery information regarding his site visit to Certified Enterprises' Anaheim, California facility."

In addition, in that same August 3 supplement, the government disclosed for the first time documents obtained from the National Archives and Records Administration

("NARA"). These documents were produced to plaintiffs with the government's supplemental disclosures.

The government also served a supplemental response to plaintiffs' interrogatories on August 3, 2018. In that supplement, the government wrote that it supported its contention that Enterprises was a "successor-in-interest to [DWCI]" because "[CMS] transferred its assets to Certified Enterprises, Inc." Notably, the document to which the government referred in that supplement had been produced by plaintiffs themselves on January 2, 2018 --- seven months before the government supplemented its response.

In support of its motion for summary judgment, the government cited the above evidence and included a declaration from Kretch. Further, the government included a declaration by Jeremy Eggerth that plaintiffs had not previously seen. Plaintiffs thus seek to strike the declarations and facts and argument pertaining to CMS.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The district court "may exclude the information or testimony . . . unless the party's failure to comply is substantially justified or harmless." *Id.*; *see also Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("[F]ailure to disclose in a timely manner is equivalent to failure to disclose.").

The government argues that their late disclosures were justified because the government did not have the information that led to those disclosures until the July 2018 depositions. Plaintiffs suggest that the government had access to that information well before the July depositions and that the delay in disclosures was unjustified as a result.

9

The Court disagrees. Although clues about the NARA contract and CMS may have been present in document productions from earlier in the year, the government apparently lacked evidence of the connections between the information and its theory of the case until it took deposition testimony from three of plaintiffs' witnesses. Moreover, there could be no prejudice to plaintiffs because none of the information was "new" to plaintiffs in that Kretch's declaration pertains to a contract executed by plaintiff Enterprises in 2007. Furthermore, plaintiffs can hardly complain about being surprised by new arguments when those arguments were disclosed to them just a week after discovery closed --- and over two months before they filed their motion to strike. Despite plaintiffs' concerns, they have not sought to depose Kretch or take related discovery from NARA.

Finally, the Court addresses the Eggerth declaration. That declaration authenticates IRS records filed in support of the motion for summary judgment. Plaintiffs complain that the documents authenticated by the declaration were not disclosed by the government in its initial disclosures or interrogatory responses. The documents include DWCI's 2006 federal income tax return, account transcript, and current tax liability. They have no bearing on whether the plaintiffs are the alter egos of DWCI; rather, they provide background information regarding the underlying tax liability --- which plaintiffs do not and cannot contest. The government explained that it sought the declaration from Eggerth because its already-disclosed witness who could have authenticated the documents --- Agent Fox --- was unavailable to make the declaration. That Eggerth authenticated the documents instead did not prejudice plaintiffs.

Plaintiffs' motion will be denied.

## IV. Conclusion

This matter is set for trial starting December 17, 2018. A bench trial will commence at that time.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (#69) is DENIED.

**IT IS FURTHER ORDERED** that plaintiffs' motion to strike (#81) is DENIED.

Dated this  7th  day of November, 2018.

_____
STEPHEN N. LIMBAUGH, Jr.
UNITED STATES DISTRICT JUDGE